Teresa B. DOMINGO, individually and as the widow of and on behalf of the next of kin of Eugenio Domingo, deceased, Plaintiff,

v.

STATES MARINE LINES, a Delaware Corporation, Defendant.

Superior Court of Delaware.

New Castle.

March 20, 1969.

Harold Shaffer, Wilmington, for plaintiff.

Hugh L. Corroon of Potter, Anderson & Corroon, Wilmington, for defendant.

McNEILLY, Judge.

On or about October 23 1966, the MV PIONEER LEYTE, a ferry boat, and the SS GOLDEN STATE, collided while operating in the waters of Manila Bay, Republic of the Philippines. Plaintiff, Theresa B. Domingo, brings this suit, individually, and as widow of and on behalf of the next-of-kin of her husband, Eugenio Domingo, against defendant, States Marine Lines, a Delaware Corporation, which owns and operates the SS GOLDEN STATE, claiming that it is responsible for the death of her husband, a crewman on the MV PIONEER LEYTE, who drowned when his ship sank as a result of the above collision.

All surviving officers and crewmen of the MV PIONEER LEYTE are citizens and residents of the Philippines. The officers and crew of the SS GOLDEN STATE are all residents of the United States; however, none of them resides in Delaware. A Board of Marine Inquiry established by the Philippine government found the defendant's vessel solely at fault in the collision, a decision which reversed the earlier finding of another inquiry and which is currently being appealed. At the hearing held by the Board of Marine Inquiry many officers and crewmen of the MV PIONEER LEYTE testified, but defendant offered only the testimony of its captain, whose account of the events leading

up to the collision were found by the Board to be inconsistent.

Several suits are currently pending in the Philippines against defendant, brought by representatives and widows of other victims of the accident. In one or two instances defendant's local ship agent in the Philippines, International Harvester Macleod, has been joined as co-defendant. However, many other claimants, including plaintiff, have had their suits referred by Philippine counsel to New York counsel for prosecution allegedly because of difficulties in establishing the jurisdiction of Philippine Courts over defendant.

In plaintiff's first action, she was joined with all persons having death and personal injury claims in a class action in the Supreme Court of the State of New York, County of New York. The complaint named the Philippine Consul General in New York as plaintiff, who sued on behalf of plaintiff herein and "all others similarly situated". Defendant moved to dismiss and plaintiff voluntarily discontinued.

A second action was commenced by plaintiff in the Supreme Court of the State of New York, County of New York. Defendant moved to dismiss on the ground of *forum non conveniens* and the motion was granted on February 26, 1968. Judgment was entered on March 5, 1968. In that case Justice Streit stated inter alia:

"The general rule of law applicable to these facts is that the courts of New York will not retain jurisdiction of an action based on an out-of-State tort in which the parties are nonresidents in the absence of special circumstances or reasons.

There is no showing that the courts in the Philippines will not be able to aid the plaintiff. In fact it is indicated that various cases arising out of this accident are already pending there. There is no showing that this court can more effectively dispose of this case or that the plaintiff will be prejudiced by the failure to retain jurisdiction. Accordingly, as the plaintiff has shown no special circumstances or reasons to retain jurisdiction, the general rule applies and the action is dismissed."

This dismissal is currently being appealed.

A similar and third suit has also been filed in the New York district courts, but apparently plaintiff decided to sue defendant in Delaware as a safeguard against the possibility of finding the New York forums closed to her action. Defendant has moved to have this case dismissed on grounds of *forum non conveniens*.

Plaintiff alleges primarily as her reason for bringing suit in the United States that jurisdiction over defendant in the Philippines is uncertain. Although defendant has allowed itself to be sued there by several claimants, plaintiff fears either that the Philippine Court may ultimately dismiss these suits *sua sponte* for lack of jurisdiction, or that defendant may elude further service of process there once all available forums are closed to her suit here. She also states that she will not be able to join with the other claimants to prosecute a joint or class action against the defendant in the Philippines as she can in this country, which makes the difference between an economically feasible suit and one which is too costly to pursue; and it is her belief that, even if defendant did submit to suit in the Philippines, she would not be able to discharge her burden of proof due to her inability to obtain compulsory process over defendant's officers and crewmen. Moreover, any judgment obtained in the Philippines would be worthless because defendant has no assets there.

Defendant contends that plaintiff should pursue her remedy in the Philippines. From its point of view this is necessary in order to avoid the injustice which would otherwise result from its inability to compel testimony from the Philippine crewmen of the MV PIONEER LEYTE bearing on

the accident itself, and from the relatives and employers of deceased victims bearing on the question of damages. It claims that unless suit is brought in the Philippines defendant will be unable to join the owners of the PIONEER LEYTE as third-party defendant. Defendant also points to the suits already pending against it as dispelling any question of jurisdiction, and alleges that the joint liability of International Harvester Macleod, which does have assets in the Philippines, assures the worth of any judgment obtained there.

Both parties accuse the other of forum shopping, plaintiff's motive allegedly being to secure a larger verdict in the United States, and defendants motive allegedly being to guarantee itself, at worst, of a small verdict in the Philippines.

The leading case in the United States on forum non conveniens is Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which involved an action in tort for recovery of Three hundred sixty-five thousand dollars ($365,000.00) damages suffered by the plaintiff when defendant's alleged negligence in delivering gasoline to plaintiff's warehouse tanks caused a fire. Although the accident occurred in Lynchburg, Virginia, plaintiff brought suit in New York based on diversity of citizenship. In affirming the district court's dismissal on *forum non conveniens,* the Supreme Court said:

    * * * In all cases in which the doctrine *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.

    * * * Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expedi-

tious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex", "harass", or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

    Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in conjested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases, which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. 506–509, 67 S.Ct. 842–843.

Shortly after the *Gilbert* decision, 28 U.S.C. § 1404(a) was enacted providing for transfer of venue in the federal courts, which accomplished the same results as dismissal under *forum non conveniens* doctrine, but without the often harsh effects of an actual dismissal. *Gilbert* thus became less important in the federal courts. Its influence, however, continues undiminished among the states; the first Delaware case to follow it was Winsor v. United Air Lines, Inc., 2 Storey 161, 154 A.2d 561 (Super. 1958), a tort action based on an air acci-

dent brought by a widower against an airline company. A similar action instituted by the plaintiff in the New York district courts and transferred to Colorado was pending at the time. Judge Christie dismissed the case saying:

> * * * I recognize that there is an important distinction between the application of the doctrine by a state court so as to dismiss the case and the application of the doctrine by a federal court so as to transfer the case under federal statute. However, the pending of a substantially similar action in a federal court destroys much of the effect of such distinction as it applies to this case.

Thus Judge Christie found that dismissal of the case in this particular situation would operate very much like a transfer of venue under 28 U.S.C. § 1404(a), as opposed to outright dismissal. He went on to enumerate the following reasons for applying *forum non conveniens:* (1) the greater accessibility of proof in Colorado; (2) the greater effectiveness there of compulsory process; (3) the reduced total cost of obtaining willing witnesses there; (4) the applicability of Colorado law as opposed to the inapplicability of Delaware law; (5) the pendency of other similar suits in Colorado; (6) the fact that defendant's extra expenses in Delaware would be considerably greater than plaintiff's extra expenses in Colorado; (7) the absence of service or venue problems in Colorado; (8) the fact that Delaware's only relevant contact with the case was the defendant's incorporation here.

■ Many of these enumerated factors in *Winsor* are parallel to the present factual situation. However, the parallel is far from complete. Whether defendant will incur "considerably greater" expense by defending here than plaintiff will incur by prosecuting in the Philippines is open to dispute because it would appear as though each party would save costs by litigating in the forum to which they are respectively opposed. The absence of jurisdictional difficulties in the Philippines is a more serious dispute, for as established in *Gilbert,* the existence of an alternative forum is the *sine qua non* for application of the doctrine of *forum non conveniens.* But even putting all this aside for the moment, a striking disparity between the present case and *Winsor* exists in that no similar suit between this plaintiff and this defendant is currently pending elsewhere free from jurisdictional difficulties. None whatsoever is pending in the Philippines. That which is pending in New York is under attack on grounds of *forum non conveniens.* Accordingly this court is not presented, as was the court in *Winsor,* with a situation in which dismissal will operate with no harsher effects than a mere transfer in venue.

The absence of a similar suit between the parties pending elsewhere has been given great importance by the Supreme Court of this state. In Kolber v. Holyoke Shares, Inc., 213 A.2d 444 (Del.Sup.1965) where a New York resident sued to recover a finder's fee for the sale of a Delaware corporation's business, the lower court's application of *forum non conveniens* was reversed, despite the absence of all witnesses from this state, the applicability of an unsettled point of New York law, and lack of any contact with Delaware except for the fact of incorporation here. Mr. Justice Hermann in his opinion for the Court, said:

> "It is quite ordinary for Delaware courts to determine causes (sic) in which all persons involved are non-residents of Delaware and in which none of the events involved occurred here. These factors alone are not, in our opinion, sufficient to warrant interference with the plaintiff's usual choice of forum.
>
> * * * It is not unusual, of course, for Delaware courts to deal with open questions of the law of sister states or of foreign countries. * * *"

213 A.2d 446. The Court then noted that *Winsor* involved obvious forum shopping

with plaintiff having a similar suit pending elsewhere, and that General Foods Corp. v. Cyro-Maid, Inc., 198 A.2d 681 (Del.Sup. 1964), (the first case in which the Supreme Court set forth the factors to be considered in applying *forum non conveniens)* involved not a dismissal but a stay pending the outcome of a similar action elsewhere. The *Kolber* opinion continues:

> We confirm the guide lines set forth in General Foods as to factors which may be considered in the application of the doctrine of *forum non conveniens. The requisite showing with respect to such factors is far greater, however, for a dismissal than for a stay.* The dismissal of an action on the basis of the doctrine, and the ultimate defeat of the plaintiff's choice of forum, may occur only in the rare case in which the combination and weight of the factors to be considered *balance overwhelmingly* in favor of the defendant. Compare Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) This is not such a case. (Emphasis supplied)

> "We have considered the other Delaware cases called to our attention involving the doctrine of *forum non conveniens.* In none, except Winsor, was the case finally dismissed on that ground; and, as Chief Justice Terry observed, Winsor was "an extreme case." Chrysler Corporation v. Dann, 3 Storey 430, 171 A.2d 223 (1961). Cf., Dietrich v. Texas National Petroleum Co., Del. Super., 193 A.2d 579 (1963)."

213 A.2d 447.

The importance attached to the existence of a similar pending suit elsewhere was reiterated in Parvin v. Kaufmann, 236 A.2d 425 (Del.Sup.1967). In upholding retention of jurisdiction over a derivative action brought on behalf of a Delaware corporation having its principal place of business in California, against directors for self-dealing in Nevada land transactions, the Court wrote:

> No other suit upon this cause of action is pending in any other jurisdiction, unlike the situation in the *General Foods* case and in Winsor v. United Air Line, 2 Storey 161, 154 A.2d 561. Thus, a dismissal necessarily would force the plaintiff to start anew. The consequent delay and expense weighs heavily against the defendant under the balancing test of the *Kolber* case. * * *

> This plaintiff is a resident of New York and to force him to litigate in Nevada or California would be a hardship. Not only would he have increased expense due to the distance from his home, *but he would also be forced to retain new counsel with consequent further expense and delay.* * * * (Emphasis added)

236 A.2d 427.

In light of the *Kolber* and *Parvin* cases, it is impossible to over-emphasize Judge Christie's own characterization of *Winsor* as a case in which dismissal on grounds of *forum non conveniens* would operate very much like a change of venue. The Stay granted in *General Foods* likewise operated no more harshly than a change of venue. There are no other Delaware cases in which the doctrine of *forum non conveniens* has been applied. Thus application of the doctrine in this case, where dismissal will not merely operate as a change of venue, but will force the plaintiff to start anew, would mark a definite first for Delaware Law.

Returning to *Gilbert* as the source of the doctrine, one notices that the factors to be considered are of two sorts—those pertaining to the convenience of the parties, and those pertaining to the public interest. The *Kolber* case indicates a natural tendency for the Courts of this state to de-emphasize the latter. Our Courts are not over-burdened and they often deal with questions of foreign law, resolving controversies that originated far from this forum. It is therefore the convenience of

the parties which must weigh most heavily in applying the doctrine in Delaware.

■ In this connection Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, 136 F.Supp 508 (D.Del.1955) proves an instructive case. The matter there under consideration involved, not dismissal for *forum non conveniens,* but merely change of venue. Nevertheless the Court refused to grant the motion for transfer, noting:

> " * * * (I)t cannot be said that the convenience of the parties and witnesses would best be served by adjudging the issues in North Carolina. Rather, it is only the convenience of defendant which would be served by such a transfer. A transfer for the convenience of the defendant, which would result in plaintiff being put to the same inconvenience to which the defendant would have been subject if the transfer were not granted, would not be a transfer in the interest of justice. On the contrary, such a transfer would deprive plaintiff of its chosen forum without subtracting from the total amount of inconvenience which would be incurred by both litigants.

136 F.Supp. 511. The same language might well be applied to the present case. If Delaware provides the forum for this case, defendant will face the inconvenience of obtaining testimony from reluctant Philippine citizens who are not subject to the jurisdiction of this Court. But if the case is transferred to the Philippines, the plaintiff will experience the inconvenience of obtaining testimony from reluctant American citizens who are not subject to the jurisdiction of the Philippines Courts. As in the *Miracle Stretch Underwear* case, one problem will simply have been traded for another. To be sure, plaintiff might be less inconvenienced by litigating in the Philippines, if jurisdiction could be obtained there, and a judgment enforced; but defendant cannot use plaintiff's convenience to force a change of forum. Rather, defendant must show a substantially greater convenience to itself. To make such a showing defendant apparently argues that plaintiff, if allowed to sue in Delaware, will prove her case by calling only the crew of defendant's SS GOLDEN STATE, leaving it to defendant to bring to this country testimony on its behalf from the crew of the MV PIONEER LEYTE, of which plaintiff's deceased was a member. This argument is utterly incredulous. It is much more likely that plaintiff will seek testimony from the members of the PIONEER, and that defendant will rely on its own GOLDEN STATE crew. As far as proof of damages is concerned, it will be plaintiff's burden to introduce evidence in this regard, and defendant may cross-examine the victim's employer, physician and family without hearing any of the expense which plaintiff will incur to bring these witnesses into court.

To a certain extent, of course, the court can only speculate regarding these matters; but defendant could have reduced this element of speculation by filing with the court a tentative list of witnesses which defendant will call so that the court could substantiate the degree of hardship claimed. This the defendant did not do. All it has really shown is the possibility of greater convenience to plaintiff if suit is brought in the Philippines. The court is thus constrained to conclude as in *Parvin:*

> Finally, defendants have not shown with any particularity that hardship will be imposed on them by the trial of this case in Delaware. The defendants have thus failed to sustain their burden of proof.

236 A.2d 428.

■ Not only has defendant failed to show with particularity its hardship, so that the court might conclude as required in *Kolber* that the balance of convenience "overwhelmingly" favors defendant, but it has also failed to answer plaintiff's allegation that any judgment recovered against it in the Philippines would be unenforceable. *Gilbert* expressly mentions this as a factor to be considered. The existence of an alternate forum is a mean-

ingful requirement only if both offer effective redress of plaintiff's claims. Varkonyi v. S. A. Empresa De Viacao A. R. G., 22 N.Y.2d 333, 292 N.Y.S.2d 670, 239 N.E.2d 542 (1968). The possibility that plaintiff might sue and recover from International Harvester Macleod has absolutely no bearing on defendant's liability and the appropriate forum for this litigation.

Moreover, the fact remains that defendant has not established the existence of jurisdiction over itself in the Philippines. Plaintiff has alleged, and defendant does not deny, that defendant has no license to conduct business in the Philippines. Absent any evidence to the contrary, this court will not presume that defendant has been guilty of wrongdoing—that it, conducting business in the Philippines without a license—especially where defendant would rely on that presumption to deprive the plaintiff of her choice of forum. The Supreme Court of the Philippines has made "doing business" in the Philippines the *sine qua non* for obtaining jurisdiction over a foreign corporation by means other than personal service of process or attachment of property. Marshall-Walls Co. v. Elser & Co., 46 Phil. 70; Pacific Micronesian Lines, Inc. v. Del Rosario, 96 Phil. 23. The latter case is particularly instructive. There the widow of a deceased crewman of the defendant's ships sought to obtain jurisdiction over defendant by serving the Philippine agent through whom the crewman had been hired. Since such hiring was not part of the business operations of defendant, but merely incidental thereto, serving defendant's hiring agent did not secure jurisdiction over defendant. The fact that in the present case defendant has not challenged the sufficiency of obtaining jurisdiction over itself by serving International Harvester Macleod is no guarantee that such a challenge will not be made as to plaintiff's suit.

It may be that defendant is indeed doing business in the Philippines. Foreign corporations have been found to be "doing business" by collecting premiums in the Philippines on outstanding policies, Manufacturer's Life Ins. Co. v. Meer, 89 Phil. 35; by maintaining an exclusive distributing agent in the Philippines to sell its products there, Mentholatum Co. v. Mangaliman, 72 Phil. 524; by maintaining a settling agent there which had issued twelve marine policies covering different shipments to the Philippines; General Corp. of the Philippines v. Union Ins. Soc'y of Canton, Ltd., 87 Phil. 313; or by sending a trade manager to the Philippines for the purpose of starting and continuing business operations there, Far East International Import & Export Corp. v. Nankai Kogyo Co., L–13525, Nov. 30, 1962. However, the mere record of many of defendant's ships putting into port in the Philippines is no evidence of such business. These ships could merely be refueling or taking on crew members, activities incidental to their primary business. Even an occasional taking on or discharge of cargo does not constitute "doing business". Eastboard Navigation, Ltd. v. Yamael & Co., 102 Phil. 1. The agency of International Harvester Macleod may well be for the sole purpose of obtaining berths and provisions for defendant ships. There is certainly no indication that it is authorized to receive service of process for defendant.

On the basis of the foregoing cases and on these facts the Court can only conclude that plaintiff in fact might never have had an alternate forum in which to bring her suit. Compare Vandam v. Smit, 101 N. H. 508, 148 A.2d 289 (1959), where the evidence showed that defendant, a resident of New Hampshire, had sufficient assets in Holland and West Germany to satisfy the foreign plaintiff's claims, but absent evidence that these countries would entertain his suit in debt and assumpsit to recover monies loaned and transferred for safekeeping, no alternate forum would be presumed to support dismissal.

In conclusion it is worth noting that a cardinal purpose of the doctrine of *forum non conveniens* is to prevent a plaintiff from seeking to vex, harass, or oppress

the defendant by inflicting upon him expense or trouble *not necessary to his own right to pursue his remedy*. Where at the time of bringing suit no satisfactory alternate forum was available, either due to jurisdictional uncertainties or the probable uncollectibility of a judgment, the forum in which plaintiff has commenced his action is obviously necessary to protect his possible remedy; hence no questions of intent to harass can arise. For this reason, even though a more convenient forum should subsequently become available, as where the defendant offers to submit to service of process somewhere else, still the Court may refuse to dismiss the action. See Dietrich v. Texas National Petroleum Co., 193 A.2d 579 (Del.Super.1963). The same rationale would apply to this case.

For the foregoing reasons the motion to dismiss should be denied. However, inasmuch as New York, by agreement of counsel for both plaintiff and defendant, appears to be the most convenient forum in this country, a stay of this action should be granted on motion, pending the outcome of the current New York actions. It is so ordered.