Teresa B. **DOMINGO, individually and as the widow of and on behalf of the next of kin of Eugenio Domingo, Deceased, Plaintiff,**

v.

**STATES MARINE LINES, Defendant.**

Jose Go **TIAC, next of kin of Herminigilda Alvarez-Go, Deceased, et al., Plaintiffs,**

v.

**STATES MARINE LINES, INC., Defendant.**

**Nos. 68 Civ. 1394, 70 Civ. 4639**

United States District Court, S. D. New York.

March 20, 1972.

As amended, April 13, 1972.

Jacob Rassner, New York City, for plaintiffs.

Kirlin, Campbell & Keating, New York City, for defendant; James B. Magnor, Thomas E. Stiles, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

On October 23, 1966, the S.S. GOLDEN STATE collided with the M/V PIONEER LEYTE while the latter was leaving Manila Harbor, in the Republic of the Philippines. The GOLDEN STATE, some 7600 gross tons and 453 feet in length, was a United States flag vessel, owned and operated by States Marine Lines, a Delaware corporation, the defendant in these two actions. The PIONEER LEYTE was a Philippine vessel, some 779 gross tons and 226 feet in length, owned by Filipinas Pioneer Lines, a Philippine corporation.

The PIONEER LEYTE was sunk in the collision, with a loss of approximately 100 lives. There were also some injured survivors. All of those lost or injured appear to have been citizens and residents of the Philippines. The GOLDEN STATE suffered only damage and no casualties. These two actions arise out of that collision.

The plaintiff in 68 Civ. 1394, Teresa B. Domingo, a citizen and resident of the Philippines, sues on her own behalf and on behalf of the "next of kin" to recover for the death of her husband, who was killed in the collision. The companion action, 70 Civ. 4639, is brought by (1) the next of kin or legal representatives of 93 other such decedents; (2) individuals who are, apparently, survivors; and (3) the Vice Consul of the Republic of the Philippines, as representative of the estates of all those who were killed in the collision and the survivors who were injured. Jurisdiction is based on diversity of citizenship and "general maritime law".

A number of other proceedings arising out of the collision have been instituted in various jurisdictions. An official Board of Maritime Inquiry in the Philippines conducted an investigation of the accident and found the GOLDEN STATE solely at fault.

Actions have been brought in the Philippines against States Marine Lines to recover for the deaths of at least 19 of the persons killed in the collision. States Marine Lines has appeared in and is contesting those actions.

An action commenced in the New York Supreme Court by the Philippines Consul General, as representative of the plaintiff Domingo and "all others similarly situated" against States Marine Lines was voluntarily discontinued, after the defendant had moved to dismiss. A second action, commenced by the plaintiff Domingo in the New York Supreme Court, was dismissed on the ground of forum non conveniens. An appeal is pending from that dismissal.

Plaintiff Domingo has also instituted an action against States Marine Lines similar to her action in this District, in the Superior Court of Delaware, which is pending there.[1]

In the two actions in this District, defendant States Marine has moved to dismiss on the ground of forum non conveniens.[2] On the record before me, it

---

1. The Supreme Court of Delaware held that the Delaware Superior Court did not abuse its discretion in denying a motion to dismiss for forum non conveniens. States Marine Lines v. Domingo, 269 A.2d 223 (Del.1970), aff'g, 253 A.2d 78 (Del. Super.1969).

2. The enactment of 28 U.S.C. § 1404(a) in 1948 did not, as plaintiffs suggest, deprive Federal District Courts of the power to dismiss, rather than transfer, an ac-

tion for forum non conveniens when the alternative forum is a state court or a court in a foreign country to which, obviously, transfer is impossible. Fitzgerald v. Westland Marine Corp., 369 F.2d 499 (2d Cir. 1966); C. Wright, Federal Courts § 44, at 165 (2d ed. 1970). Since these cases sound in maritime tort under general maritime law, federal and not state law of forum non conveniens governs, even if the question be viewed as "substantive". See Kermarec v. Compagnie Gen-

is plain that these motions should be granted.

### (1)

■ The doctrine of forum non conveniens is not applicable unless there is at least one other forum in which the parties can litigate their claims on the merits.

> In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506–507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947).

*See also* North Branch Products, Inc. v. Fisher, 284 F.2d 611 (D.C. Cir. 1960), cert. denied, 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961); Fiorenza v. United States Steel International, Ltd., 311 F.Supp. 117 (S.D.N.Y.1969); Odita v. Elder Dempster Lines, Ltd., 286 F.Supp. 547 (S.D.N.Y.1968).

■ There are a number of suits to recover for deaths occurring in the collision pending against States Marine in the Philippine Courts. It appears, without contradiction, that States Marine "has appeared in and answered such suits, and has not and cannot, under Philippine law, contest the jurisdiction of the Philippine courts." It is uncontroverted that States Marine Lines has an agent in the Philippines, International Harvester MacLeod, duly authorized to accept service of process on its behalf, and that defendant's vessels frequently are in Philippine ports.

The plaintiffs here and those represented by the plaintiffs who have not commenced suit in the Philippines are all citizens and residents of that country. They also are entitled to sue States Marine Lines there as a matter of right and can obtain personal jurisdiction over States Marine in such actions.

In addition, the defendant will be held to its affirmative representation to the Court that it is subject to Philippine jurisdiction by making its submission to jurisdiction there an express condition of the order granting the relief which it seeks.

The statute of limitations will not bar recovery in the Philippines by those who have not already brought actions there, as the plaintiffs suggest. States Marine has agreed to waive the statute of limitations if such actions are brought within a reasonable time. That waiver will also be made a condition of dismissal.

Thus, it is clear that another forum, that of the Philippines, is fully available to the plaintiffs.[3] The question, then, is the application of the doctrine of forum non conveniens to the cases at bar.

### (2)

■ The factors to be considered in determining whether an action should be dismissed for forum non conveniens are detailed by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947):

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.
>
> · · ·
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for

---

erale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

3. The fact that plaintiff Domingo has an action pending in Delaware against States Marine is not of significance here. Apparently, none of the numerous other plaintiffs have brought suit there.

courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

See also Canada Malting Co., Ltd. v. Paterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932); De Sairigne v. Gould, 83 F.Supp. 270 (S.D. N.Y.), aff'd per curiam, 177 F.2d 515 (2d Cir. 1949), cert. denied, 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338 (1950).

Application of these criteria to the cases at bar compels the conclusion that the balance is so strongly in favor of the defendant that the plaintiffs' choice of forum should be overridden. See Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 508, 67 S.Ct. 839, 91 L.Ed. 1055.

All the events with which these actions are concerned took place in the territorial waters of the Republic of the Philippines. The plaintiffs' sources of proof are almost entirely there. The witnesses on which plaintiffs can be expected to rely to establish liability, such as the officers and crew of the PIONEER LEYTE, and those who appeared before the Philippine Board of Marine Inquiry investigating the collision, are all in the Philippines. It can scarcely be imagined that plaintiffs would rely on personnel of the GOLDEN STATE on that issue, as they seem to suggest.[4]

It is obvious that the access to sources of proof on the extensive and important issues of damage arising from almost 100 separate casualties, all Philippine citizens and residents, would be vastly easier in the Philippines than it would be here.

The vast majority of witnesses, both willing and unwilling, are in the Philippines. The cost of obtaining willing witnesses would be minimal there as compared with here. Compulsory process in the Philippines would be available to the plaintiffs to obtain any witnesses who are likely to be of any aid to them. It would be vastly expensive and inconvenient for plaintiffs to bring their witnesses to the United States or for the defendant to do so, if it became necessary for it to use Philippine witnesses. And, of course, none of such witnesses are amenable to process here.

It is somewhat difficult to understand the plaintiffs' eagerness to forego all the manifest and enormous advantages of litigating their claims in the Philippines. They suggest that any judgment obtained in the Philippines might be uncollectible. That might be a plausible explanation if it had any merit. It does not. Such judgments will be based upon personal jurisdiction and fully binding on the defendant. Even if defendant does not have assets on hand in the Philippines sufficient to satisfy any judgment rendered there (and no such showing has been made), its ships, which are valuable properties, are frequently in Philippine ports and likely to be available in that country for levy and execution.

Moreover, New York gives conclusive effect to judgments of foreign countries based on personal jurisdiction, even though, as in the Philippines, Soorajmull Nagarmull v. Binalbagan-Isabela Sugar Co., Inc., 33 Sup.Ct. [of the Philippines] Reports Ann. 46 (1970), New York judgments are not given similar effect in the foreign jurisdiction. Johnston v. Compagnie Generale Transatlantique, 242 N.Y. 381, 152 N.E. 121 (1926);

---

4. It may be noted that the decision of the Philippine Board of Marine Inquiry finding the GOLDEN STATE at fault was based on testimony of local witnesses, with the exception of that of the Master of the GOLDEN STATE.

Cowans v. Ticonderoga Pulp & Paper Co., 219 App.Div. 120, 219 N.Y.S. 284 (3rd Dep't), aff'd on opinion below, 246 N.Y. 603, 159 N.E. 669 (1927). Thus, in the unlikely event that States Marine failed to satisfy a Philippine judgment, the judgment could be enforced against States Marine by a suit on the judgment in New York where States Marine has its principal offices. It appears, also, that a Philippine judgment could be similarly enforced in Delaware where States Marine is incorporated. See Bata v. Bata, 39 Del.Ch. 258, 163 A.2d 493, 503 (Del.1960), cert. denied, 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961), where the Delaware Supreme Court held that a foreign judgment was *res judicata*.[5]

The defendant does not take the position that it would be more convenient and less expensive to produce officers and crewmen of the GOLDEN STATE as witnesses for the defense in the Philippines and it could not well do so. The defendant has not attempted to name the witnesses on whom it expects to rely in its defense and the subject matter of their expected testimony as is customary in *forum non conveniens* cases. Defendant's position is that it is quite willing to produce any such witnesses in the Philippines because this district is totally unsuitable for the trial of these cases and the Philippines is plainly the forum where they should be tried. The convenience of defendant's witnesses is not of importance here. It is the evaluation and balancing of all of the other relevant factors which must determine the question before me.

It is scarcely necessary to dwell on the fact that this Court is the most heavily burdened Federal District Court in the country. The Civil Calendar grows more congested all the time. The priority now properly given to the disposition of criminal cases tends to increase this congestion. Moreover, the substantial number of vacancies on a bench of 27 emphasizes the seriousness of the congestion problem. In all likelihood it will be several years, at least, before these cases can be reached for trial in this district. There is no indication that there would be any difficulty in obtaining prompt disposition in the Philippine courts.

I see no reason why this Court, with its heavy burdens and responsibilities, should be burdened with cases like these which, from every point of view, should be tried in the courts of the nation where all the relevant events occurred and whose own citizens are primarily involved. Certainly, this district and the Metropolitan area in which it is situated have no conceivable relation to this litigation except for the fact that the defendant happens to be doing business here.

It is plain that Philippine law will govern. See Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Thus, the Philippine courts are the appropriate forum to apply the applicable law and to determine the legal issues involved in these cases.

Moreover, the defendant might well be prejudiced by reason of its inability to implead or cross claim against Filipinas Pioneer Lines, the owner of the PIONEER LEYTE, in this district. Defendant could only do so in the Philippines where jurisdiction over Filipinas Pioneer Lines, a Philippine corporation, could be obtained.

In fact, all the practical problems that make trial of a case easy, expeditious and inexpensive would be much more easily met by a Philippine trial.

Counsel for the plaintiffs has not come forward with any sound reason why this

---

5. In a diversity suit on a foreign judgment brought in or removed to a federal court, state law would plainly apply. Somportex Ltd. v. Philadelphia Chewing Gum Corp., 318 F.Supp. 161, 164 (E.D.Pa.1970); Svenska Handelsbanken v. Carlson, 258 F.Supp. 448, 450 (D.Mass.1966). See Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is thus unnecessary to discuss earlier cases such as Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

Court should retain jurisdiction in these cases. In my view, the combination of relevant factors in these cases overwhelmingly demonstrates that they should not be tried here but should be tried in the Philippines. See Garis v. Compania Maritima San Basilio, 386 F.2d 155 (2d Cir. 1967); Fitzgerald v. Westland Marine Corp., 369 F.2d 499 (2d Cir. 1966). This is plainly "one of those rather rare cases where the doctrine [of forum non conveniens] should be applied. . . ." Gulf Oil Corp. v. Gilbert, *supra*, 330 U.S. at 509, 67 S.Ct. at 843, 91 L.Ed. 1055.

■ The decision of the Superior Court of Delaware in the action brought in that jurisdiction by plaintiff Domingo against States Marine, which denied the defendant's motion to dismiss for forum non conveniens, 253 A.2d 78 (Del.Super. 1969), and the holding of the Supreme Court of Delaware that the Superior Court did not abuse its discretion in so doing, 269 A.2d 223 (Del.1970), is not in any way determinative of the issues now before me. These decisions are not *res judicata*, as plaintiff argues, and would not be even if they had been made by the courts of New York, rather than Delaware. See Parsons v. Chesapeake & Ohio Ry. Co., 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963). Nor do I consider them in any way binding upon me.[6]

The discretionary determination to be made here requires "evaluations of similar, but by no means identical, objective criteria" (Parsons v. Chesapeake & Ohio Ry. Co., *supra*, 375 U.S. at 72–73, 84 S.Ct. at 186) to those considered by the Delaware courts. For example, the problem of the burdens upon his Court and the congestion which exists here is not paralleled in the Delaware case and this factor does not appear to have been even considered by the Delaware courts. These motions must be decided on the record before me by an evaluation of the relevant criteria which apply here.

The Delaware courts undoubtedly have the right to decide for themselves whether they will retain or decline jurisdiction in particular cases. Such decisions largely involve questions of Delaware law and judicial policy which are confined to that state and do not affect my decision here. Moreover, insofar as the Delaware opinions may appear to express different views on particular issues from those which I have expressed here, I do not follow them.

Defendant's motions to dismiss these two actions on the ground of forum non conveniens are granted. Such dismissal will be upon the express conditions to be embodied in the order to be entered, (1) that defendant submit to the jurisdiction of the Philippine courts in any actions which may be commenced in the Philippines by any of the plaintiffs in the case at bar, or the representatives of such plaintiffs, to recover for death or injuries resulting from the accident of October 23, 1966, provided such actions are commenced within one year of the date of the order of dismissal to be entered herein; (2) that defendant waive the statute of limitations as a defense in any such actions; and (3) that in the event defendant fails to comply with any of these conditions, plaintiffs affected by such failure may move to vacate the dismissal and to reinstate the action, as to them, in this Court.

Settle order on ten days' notice.

---

6. It will be remembered that the New York Courts have already decided the question the other way by dismissing one of the actions arising out of the collision brought in New York on the ground of forum non conveniens.