George **PAPAGEORGIOU**

v.

**LLOYDS OF LONDON and Participating Insurers of Lloyds of London.**

John **PATERAS**

v.

**LLOYDS OF LONDON and Participating Insurers of Lloyds of London.**

Civ. A. Nos. 75–217, 75–1049.

United States District Court,
E. D. Pennsylvania.

July 27, 1977.

Avram G. Adler, Philadelphia, Pa., for plaintiffs.

William G. Downey, E. Alfred Smith, Timothy J. Mahoney, Philadelphia, Pa., for defendants in Civ. A. No. 75–217.

William G. Downey, Philadelphia, Pa., for defendants in Civ. A. No. 75–1049.

MEMORANDUM

HUYETT, District Judge.

Plaintiffs George Papageorgiou and John Pateras have filed identical complaints charging Lloyds of London and its individual participating insurers with false imprisonment and defamation. A fair reading of the rather cryptic amended complaints reveals that their grievances can be traced to the sinking of the S. S. Agia Irene on July 23, 1969 on a voyage from Spain to Belgium. Papageorgiou served as Chief Mate on

the vessel and Pateras as second mate. The vessel was registered in Piraeus, Greece under the ownership of the Agia Steamship Corp., á Panamanian corporation, and it was issued under a maritime hull policy with defendants. In an effort to avoid payment of claims under that policy, the complaints allege that Lloyds and its insurers conspired to interfere with certain Greek proceedings inquiring into the sinking of the vessel. It is further claimed that through the defendants' influence, the plaintiffs were falsely imprisoned and their reputations as maritime officers were disparaged with the malicious intention to prevent them from gaining maritime employment commensurate with their skill and ability.

Federal jurisdiction is asserted under 28 U.S.C. § 1333, pertaining to cases in admiralty, and 28 U.S.C. § 1350, pertaining to cases in violation of the law of nations. Defendants have moved to dismiss the complaints on a variety of grounds, including lack of subject matter jurisdiction and the doctrine of forum non conveniens. We deny defendants' motion to dismiss for lack of subject matter jurisdiction, however, we conclude that these actions must be dismissed on the basis of forum non conveniens.

■ With respect to subject matter jurisdiction, the defendants vigorously challenge both asserted bases for jurisdiction. Although the issue is not free from doubt, we believe that admiralty jurisdiction lies here. It is true that the tortious acts complained of occurred on land rather than in navigable waters; however, the false imprisonment and defamation stemmed from an investigation of a maritime casualty and the damage complained of is the loss of maritime employment. In these circumstances, we conclude that the complaints bear a strong relationship to the traditional concerns of maritime transportation, and federal admiralty jurisdiction was properly invoked. See *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Since we have concluded that we have subject matter jurisdiction under 28 U.S.C. § 1333, we need not consider whether jurisdiction also lies under 28 U.S.C. § 1350.

The defendants also maintain that even assuming that these complaints are within the federal admiralty jurisdiction, we should decline to exercise that jurisdiction because the Eastern District of Pennsylvania is such an inconvenient and illogical forum to litigate these matters. The Supreme Court has long recognized the power of a federal court to decline to exercise its jurisdiction in its discretion where the interests of justice dictate that the plaintiff's chosen forum is decidedly less appropriate than another available forum. This is particularly so in the case of admiralty jurisdiction, which potentially extends to any maritime case arising anywhere in the world. See *Lauritzen v. Larson*, 345 U.S. 571, 577, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

■ In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055, the Supreme Court enumerated both the private and public interests that may be taken into account in deciding a forum non conveniens question. Private interests that may be relevant here include: (1) the relative ease of access to proof; and (2) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses. The parties have submitted a barrage of affidavits addressed primarily to the merits of the case. Without regard to the truth or falsity of these affidavits, one fact is strikingly apparent—all of the events in issue transpired in Greece and all of the non-party affiants are non-residents of the United States. After the sinking of the Agia Irene, a Greek administrative tribunal conducted an inquiry into the incident, and following its completion criminal charges were lodged against both plaintiffs in Greece. With the exception of the plaintiffs themselves, all of the affiants hail from Greece, and the transcripts of the Greek proceedings are written in the Greek language and are the subject of widely disparate translation by the parties. By contrast, it appears that no relevant evidence,

either live or documentary, will be found in the United States. The defendant Lloyds of London is an association of underwriters and insurers with agents in both the United States and Greece, and its principal place of business is London, England. The defendant participating insurers of Lloyds of London are individual insurers "operating through and in conjunction with" Lloyds of London. (Amended Complaint, ¶ 5). It appears to us that it will be burdensome for all parties to try this case in Pennsylvania, but more so for the defendants. The plaintiffs themselves will no doubt testify concerning the events in Greece, and the burden will be comparatively slight since they are residents of the United States. But for the defendants, *all* of their proof lies outside the United States, and they will be put to great expense to defend the case here. Moreover, non-party witnesses in Greece are beyond the subpoena power of the United States. Fed.R.Civ.P. 45(e)(1).

Public interests are also implicated in the forum non conveniens question. *Id.*, at 508–09, 67 S.Ct. 839. Jurors, courts and the community in general in the Eastern District of Pennsylvania should not be burdened with litigation that has only the most remote connection with the District. Ordinarily a community has an interest in providing a forum for its residents to litigate their grievances. But here, even that interest will not be served, since the defendants are non-residents of the state and they have no meaningful connection with Pennsylvania other than their lawyer's office. And the underlying controversy has not the slightest connection with this country and the most intimate connection with the Greek legal process.

Equally important in the public interest aspect of the forum non conveniens inquiry is the fact that under the choice of law principles enunciated in *Lauritzen v. Larson*, 345 U.S. 571, 583–92, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), we will be required to apply Greek law in the trial of this case. Observing that federal maritime jurisdiction extends in theory to any maritime tort occurring in navigable waters anywhere in the world, the Court stated:

"[Maritime law] aims at [the] stability and order through usages which considerations of comity, reciprocity and long-range interest have developed to define the domain which each nation will claim as its own. Maritime law . . . has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved. The criteria, in general, appear to be arrived at from weighing of the significance of one or more connecting factors between the shipping transaction regulated and the national interest served by the assertion of authority." *Id.*, at 582, 73 S.Ct. at 928.

Those factors which may be relevant to the choice of law in this case are the place of the wrongful act, the nation in which the ship is registered and the allegiance or domicile of the injured person. As we earlier noted, the acts complained of occurred in Greece and, to the extent that the place where the Agia Irene sank is significant, that event occurred off the coast of Spain. In addition, the ship was registered in Greece and its owners were Greek nationals. Indeed, the false imprisonment and defamation complained of were incident to a Greek administrative inquiry into the sinking of the Agia Irene and subsequent criminal proceedings against both Pateras and Papageorgiou for misconduct in connection with the sinking. Accordingly, we conclude that Greece's interest in applying its law to the case is a strong one. On the other hand, the plaintiffs, Greek citizens who have forsaken their homeland in the wake of the events in issue in this case and who have taken up residence in the United States, do give this country a measurable interest in the application of American law to protect its own residents. But this interest pales in comparison with the claim of the defendants to the application of Greek law, particularly since the plaintiffs were resident citizens of Greece at the time of the sinking of the Agia Irene and subsequent investigations. On balance, we con-

clude that *Lauritzen v. Larson, supra,* requires the application of Greek law to this case.

In summary, both the private interest of the defendants and the public interests implicated by the plaintiffs' choice of an American forum impel us to conclude that the Eastern District of Pennsylvania is an improper forum, and the complaints must be dismissed under the doctrine of forum non conveniens.