**Maren DAHL, Personal Representative of the Estate of Stale Dahl, Deceased, and Anne Marie Drangeld, Personal Representative of the Estate of Olan Drangeld, Deceased, and Bjord Turid Fosen, Personal Representative of the Estate of Jan Fosen, Deceased, and Ingunn Koppergard, Personal Representative of the Estate of Age Koppergard, Deceased, Plaintiffs,**

v.

**UNITED TECHNOLOGIES CORPORATION, Defendant.**

Civ. A. Nos. 78–363 to 78–366.

United States District Court, D. Delaware.

June 8, 1979.

John Biggs, III of Biggs & Battaglia, Wilmington, Del. and Marvin I. Barish of Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for plaintiffs.

Allen M. Terrell, Jr., and William J. Wade of Richards, Layton & Finger, Wilmington, Del., for defendant.

## OPINION

LATCHUM, Chief Judge.

These civil actions were filed in this Court on August 23, 1978 by four Norwegian residents (collectively, the "plaintiffs")[1] as personal representatives of four Norwegian decedents who died in a crash of a Norwegian owned and operated helicopter in Norwegian territorial waters of the North Sea on November 23, 1977.[2] The named defendant in each case is United Technologies Corporation ("UTC"), a Delaware corporation, which maintains its principal place of business in Hartford, Connecticut.[3] UTC manufactured and sold the helicopter involved in the crash.[4] Jurisdiction is based on diversity of citizenship as provided in 28 U.S.C. § 1332.

The complaint essentially alleges that the crash in which the plaintiffs' decedents died was proximately caused by a defect in either the design or manufacture of the helicopter by UTC. The plaintiffs therefore seek to recover damages from UTC for the injuries and death sustained by their respective decedents. The plaintiffs have advanced three separate theories of liability: (1) negligence; (2) strict liability in tort under Restatement (Second) of Torts § 402A;[5] and (3) breach of express and implied warranties.

---

1. Docket Item 1, par. 1; all docket items cited will refer to C.A.No. 78–363.

2. *Id.;* Oytvedt Affid. (Docket Item 10), par. 3.

3. Docket Item 1, par. 2; Arnold Affid. (Docket Item 8), par. 3.

4. Docket Item 1, par. 4.

5. Restatement (Second) of Torts § 402A provides:

   § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
   (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   (a) the seller is engaged in the business of selling such a product, and
   (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   (2) The rule stated in Subsection (1) applies although
   (a) the seller has exercised all possible care in the preparation and sale of his product, and
   (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The cases are presently before the Court on UTC's motion to dismiss on the ground of *forum non conveniens*.[6]

## I. BACKGROUND FACTS

On November 23, 1977, the plaintiffs' decedents, employees of the Phillips Petroleum Company, were on board a helicopter headed for a mobile drilling rig in the North Sea.[7] The helicopter crashed about thirty miles off the coast of Norway; there were no survivors.[8] The helicopter was owned and operated by Helikopter Service A/S, a Norwegian corporation, which does business only in Norway and the North Sea.[9] The record does not indicate the cause of the crash.[10]

The helicopter involved in the crash was manufactured in 1970 by the Sikorsky Division of UTC in Connecticut.[11] It was sold on November 10, 1970 by United Aircraft International, Inc., another subsidiary of UTC, to All Nippon Airways Co., Ltd. ("All Nippon"), a Japanese corporation, in accordance with a lease agreement and option to purchase.[12] The helicopter was delivered to All Nippon in Connecticut on January 5, 1971.[13] As part of the agreement, United Aircraft International undertook to furnish All Nippon with a crew chief to assist with routine maintenance of the helicopter for a three-month period beginning on January 24, 1971. The expiration of that period marked the last contact UTC and its subsidiaries had with the helicopter.[14]

In April 1976 All Nippon sold the helicopter to Helikopter Service A/S, the Norwegian company that owned and operated it when it crashed.[15]

Additional facts pertinent to the pending motion to dismiss are set forth in the Court's discussion of the factors relevant to a *forum non conveniens* determination.

## II. APPLICABLE STANDARDS

Under the doctrine of *forum non conveniens* "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The doctrine presupposes the existence of at least two forums in which the action could have been brought; it furnishes criteria for choice between them. *Id.* at 506–07, 67 S.Ct. 839. Where two federal forums are available, 28 U.S.C. § 1404(a) authorizes the transfer of a case from one federal district court to another on *forum non conveniens* grounds. In cases like the instant one, however, where the more convenient forum is in a foreign country, the traditional *forum non conveniens* remedy of dismissal is appropriate. *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 899 (C.A.3, 1977),

---

**6.** Docket Item 4. UTC filed four affidavits in support of its motion to dismiss. (Docket Items 8, 9, 10 and 26). The plaintiffs requested and were granted an extension of time to file their answering briefs so that they could conduct discovery on the issues raised by the motion. (Docket Item 13). The plaintiffs thereafter served two sets of interrogatories on the defendant (Docket Items 19 and 20) and deposed Robert H. Arnold, an Assistant General Counsel of UTC (Docket Item 28). The Court has considered these materials in determining the motion to dismiss for *forum non conveniens*. *See Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 645 (C.A.2), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Phoenix Canada Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445, 452 & n.31 (D.Del.1978).

**7.** Docket Item 1, pars. 5 and 6.

**8.** Arnold Affid., par. 6.

**9.** Ringdal Affid. (Docket Item 9), par. 4.

**10.** The only evidence on this point is the following statement in paragraph 6 of the Arnold affidavit:

Upon information and belief, the helicopter may have been flying quite low in icing rain and the crew might have become disoriented. Upon information and belief, apparently the helicopter struck the water very hard, causing the pilot to be thrown through the windshield.

**11.** Arnold Affid., pars. 2 and 4.

**12.** *Id.* par. 4 & exh. A.

**13.** *Id.* pars. 4 & 5.

**14.** *Id.* par. 5.

**15.** *Id.*

*cert. denied*, 435 U.S. 904, 78 S.Ct. 1449, 55 L.Ed.2d 494 (1978).

A threshold issue in this case is whether Norway is a suitable alternative forum. The Court concludes that it is, based on UTC's offer to consent to the following: (1) to the service of process upon it in any action brought in Norway by any of the plaintiffs herein, (2) to make its witnesses and documents available and to adjudicate the controversies in Norway, and (3) to pay any judgment rendered against it in Norway.[16] The record also indicates that the courts of Norway would exercise jurisdiction over actions brought by the plaintiffs against UTC.[17]

Relying upon dicta in *Phoenix Canada Oil Co. v. Texaco, Inc.*, 78 F.R.D. 445, 455 (D.Del.1978), the plaintiffs argue that Norway is not an acceptable alternative forum because there is no evidence that it will afford them remedies or procedural protections comparable to those available in the United States. The record, however, refutes that argument. UTC has filed an affidavit by a Norwegian attorney which indicates that the Norwegian courts will entertain jurisdiction over UTC if the plaintiffs bring any actions against it in Norway.[18] Furthermore, under Norwegian law UTC would be subject to unlimited liability for injuries and damages resulting from the helicopter crash shown to have been caused by its negligence.[19] The affidavit also states: "Norway is in the process of developing case law built up around product liability cases."[20] Finally, UTC's affiant represents that the pretrial procedures available in Norway are as conducive to the fair administration of justice as those available under United States law.[21] The plaintiffs, who are themselves Norwegian citizens, have brought no facts to the Court's attention that would warrant a contrary conclusion. Accordingly, the Court finds that Norway is a suitable alternative forum and turns to the merits of the defendant's motion.

An action should not be dismissed on the ground of *forum non conveniens* unless the balance of the convenience of witnesses and interests of justice is strongly in favor of the defendant. *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 508, 67 S.Ct. 839; *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 450 (C.A.2, 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). In the *Gulf Oil* opinion, Mr. Justice Jackson enumerated a number of factors which should be considered in reaching this balance:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. . . .

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when

---

**16.** Arnold Affid., par. 9; Ringdal Affid., par. 5(c); the record also indicates that UTC has several million dollars worth of equipment located in Norway. Docket Item 28, p. 51; Docket Item 22, ans. to int. 15.

Courts often condition dismissal of actions for *forum non conveniens* on the defendant's agreeing on the record to submit to jurisdiction elsewhere and to satisfy any judgment awarded there. *See, e. g., Grammenos v. Lemos*, 457 F.2d 1067, 1074 n. 5 (C.A.2, 1972); *Garis v. Compania Maritima San Basilio, S. A.*, 386 F.2d 155, 157 (C.A.2, 1967); *Farmanfarmaian v. Gulf Oil Corp.*, 437 F.Supp. 910, 915–23 (S.D.N.Y.1977), *aff'd*, 588 F.2d 880 (C.A.2, 1978).

**17.** Ringdal Affid., par. 5.

**18.** Ringdal Affid., par. 5.

**19.** *Id.* pars. 6 and 9.

**20.** *Id.* par. 6.

**21.** *Id.* par. 13.

litigation is piled up in congested centers instead of being handled at its origin. 330 U.S. at 508–09, 67 S.Ct. at 843.

## III. ANALYSIS

### A. *The Private Interests*

Focusing first on the private interests, the Court finds that the interests of the litigants in these cases would not be served by trial in this Court. Indeed, all such interests point to Norway as the appropriate forum for this litigation.

No evidence relevant to the claims asserted by the plaintiffs is located in Delaware. These actions arose out of a crash of a Norwegian owned and operated helicopter in the territorial waters of Norway. The recovered parts of the wreckage are located in Norway.[22] The helicopter was based and maintained in Norway and its maintenance, flight and operational records are located there.[23] The Norwegian Civil Aviation Administration is currently conducting an investigation into the probable cause of the accident.[24]

In addition to the demonstrative and documentary evidence just mentioned, a substantial amount of the testimonial evidence will come from Norwegians. Testimony from persons who knew the decedents will be relevant to the damages issue. Among the potential liability witnesses are employees of Helikopter Service A/S, employees from other firms in Norway that serviced or made installations on the helicopter, and the Norwegian government officials who investigated the accident. UTC could not compel the attendance of these Norwegian witnesses at a trial in Delaware. Nor could it compel production here of any real or documentary evidence located in Norway.

The plaintiffs, on the other hand, would not encounter similar difficulties if these cases were tried in Norway. UTC has offered to make witnesses and documents under its control available in Norway at its own expense[25] in the event these actions are dismissed. Thus, the plaintiffs will have access to the plans and records made by UTC in connection with the design and manufacture of the helicopter and to persons under UTC's control who worked on it, regardless of their location. Given UTC's offer and the complete absence of any relevant evidence in Delaware, the Court considers Norway a significantly more convenient forum in terms of the relative ease of access to sources of proof and the availability of compulsory process.

Permitting these actions to proceed in Delaware would also create several practical problems, such as the need to translate documents and the testimony of witnesses from Norwegian into English and to interpret Norwegian law. While such factors alone do not justify a dismissal on *forum non conveniens* grounds, they do weigh in favor of dismissal. *See Papageorgiou v. Lloyds of London*, 436 F.Supp. 701, 702–03 (E.D.Pa.1977).

### B. *The Public Interest*

In *Gulf Oil Corp. v. Gilbert, supra*, the Supreme Court stated:

> Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.

---

**22.** Arnold Affid., par. 7(b); Ringdal Affid., par. 10(d).

**23.** Arnold Affid., pars. 7(d) and (e); Ringdal Affid., pars. 10A, B and E.

**24.** Arnold Affid., par. 7(f).

**25.** In answer to the plaintiffs' contention that the cost to them of obtaining attendance of willing witnesses would be substantial, UTC's counsel represented that UTC was prepared to make its documents and personnel available in Norway at its own expense. Docket Item 27, p. 22.

330 U.S. at 508–09, 67 S.Ct. at 843.  Applying those principles here, the Court concludes that the public interest would definitely be better served by a trial in Norway as opposed to Delaware.

These actions, for which jury trials have been demanded, were brought by four Norwegian plaintiffs on behalf of four other Norwegians who died in a helicopter crash off the coast of Norway.  The interests of Norway in the litigation are obvious.  In contrast, the only conceivable relation Delaware has to the litigation is the fact that the defendant UTC is incorporated here.

More importantly, it appears that the plaintiffs' principal claims will be governed by the substantive law of Norway.  Count I of the complaint alleges that UTC negligently and carelessly designed and manufactured the helicopter in question and sold it in a defective condition unreasonably dangerous to the user and that these actions caused the injuries and deaths for which recovery is sought in this litigation.  Since jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, this Court must apply the choice of law rules of Delaware, the forum state.  *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  Count I clearly sounds in tort and the Delaware choice of law rule for tort claims is well settled: "Delaware has long followed tradition in holding that the substantive rights of parties in a tort action are governed by the law of the place where the tort arose, while procedure is governed by the law of the place where the action is brought."  *Friday v. Smoot*, 211 A.2d 594, 595 (Del.Supr.1965).

The parties, however, disagree about the proper interpretation of the phrase "where the tort arose."  The plaintiffs contend that the tort arose in the United States, where the allegedly defective design and manufacture of the helicopter occurred.  The defendant argues that the place of the injury is the place where the tort arose.  The courts in this Circuit have consistently interpreted the rule announced in *Friday v.* *Smoot, supra,* to require reference to the law of the place where the injury occurred rather than where the negligence took place.  *See, e. g., Paoletto v. Beech Aircraft Corp.,* 464 F.2d 976, 979 (C.A.3, 1972); *Handy v. Uniroyal, Inc.,* 327 F.Supp. 596, 599 (D.Del.1971).  The plaintiffs have cited no case to the contrary.  Hence, if these actions proceeded in this forum, the substantive law of Norway would govern Count I.

Count II of the plaintiffs' two-count complaint alleges that UTC breached express and implied warranties that the helicopter in question was safe, fit for its intended use, and designed and manufactured in accordance with the prevailing standards in the industry.  Under Delaware choice of law principles, a claim for breach of warranties is governed by the law of the place where the sale occurred.  *Handy v. Uniroyal, Inc., supra,* 327 F.Supp. at 598.  UTC sold and delivered the helicopter to All Nippon, a Japanese corporation, in Connecticut on January 5, 1971.  Thus, Connecticut law would govern the plaintiffs' breach of warranty claim.

In some cases the presence of a facially meritorious claim based on United States law might counterbalance the existence of claims based on foreign law for *forum non conveniens* purposes.  Dismissal may not be avoided, however, by the assertion of palpably specious and legally baseless claims.  Therefore "[i]nquiry by the Court as to the integrity of the alleged claims is not foreclosed."  *Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 649 (S.D.N.Y.1970).

This Court has reviewed the plaintiffs' breach of warranties claim and, without deciding the issue, notes that the claim is probably barred by the applicable statute of limitations.  Connecticut adopted the Uniform Commercial Code ("UCC") effective October 1, 1961.[26]  Under the UCC a claim for breach of warranty is barred if it is not brought within four years of the time of the breach.  *Conn.Gen.Stat.* § 42a–2–725.  Section 2–725(2) provides:

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved

---

26. *Conn.Gen.Stat.* § 42a–10–101.

party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

UTC delivered the helicopter involved in this case to All Nippon on January 5, 1971.[27] The complaint in this action was filed on August 23, 1978, more than three years after the period of limitations expired. Consequently, the plaintiffs' breach of warranties claim appears to be time barred.[28]

That possibility, together with the other substantive problems evident with respect to Count II,[29] causes the Court to accord little weight to the breach of warranties claim in determining the balance of convenience and the interests of justice in these cases.

In sum, this Court sees no reason why these cases, which call for the application of Norwegian law to claims by Norwegian plaintiffs who seek to recover for damages resulting from the crash of a Norwegian helicopter off the coast of Norway, should be heard and decided in the District of Delaware. *See Michell v. General Motors Corp.*, 439 F.Supp. 24 (N.D.Ohio 1977). Therefore, the actions will be dismissed on appropriate conditions offered by the defendant.

27. Given the facts in this case, the exception created for the situation where a warranty explicitly extends to future performance of the goods does not appear applicable.

28. Because Delaware also has adopted the UCC, the result would be the same if the Delaware statute of limitations were applied. *See* 6 *Del.C.* § 2–725(2).

29. UTC sold the helicopter to All Nippon in 1970. All Nippon sold it to the Norwegian company in 1976. The only document in the record that gives an indication of the terms of the 1970 sale is a lease agreement and option to purchase entered into by All Nippon and a subsidiary of UTC on November 10, 1970. (Arnold Affid., par. 4, exh. A). Article XV of that agreement limited UTC's liabilities to repair and replacement, subject to a requirement of 90 days written notice, of defects reported to UTC within one year of the date of delivery. *Id.* Article XV also disclaimed any implied warranties in conspicuous capital letters. *Id.* In light of these facts, the basis for the plaintiffs's breach of warranties claim is difficult to discern.