Gaynell REYNO, Personal Representative of William Fehilly, Liam Stuart Fehilly, William James McDougall Storm, David Vincent Moran and Peter Cunningham Scott, Plaintiffs,

v.

PIPER AIRCRAFT COMPANY, a corporation, Avco Lycoming Engine Division, a Division of Avco Corporation, Hartzell Propeller, Inc., a corporation, Defendants.

Civ. A. No. 77–1159.

United States District Court,
M. D. Pennsylvania.

Oct. 19, 1979.

Michael D. Moorhead, Magana, Cathcart & McCarthy, Los Angeles, Cal., Lee C. Swartz, Hepford, Zimmerman & Swartz, Harrisburg, Pa., for plaintiffs.

Chase, Rotchford, Drukker & Bogust, Peter P. Brotzen, Los Angeles, Cal., Ronald C. Scott, Philadelphia, Pa., for Hartzell Propeller, Inc.

Charles J. McKelvey, Williamsport, Pa., Kirtland & Packard, Los Angeles, Cal., for Piper Aircraft.

## MEMORANDUM

HERMAN, District Judge.

This action arises out of an airplane crash near Tulla, Scotland on July 27, 1976 in which all persons aboard were killed. The Plaintiff, Gaynell Reyno, instituted this suit as the personal representative of five decedents, William Fehilly, Liam Stuart Fehilly, William James McDougall Storm, David Vincent Moran, and Peter Cunningham Scott. Gaynell Reyno seeks general damages for the heirs and next of kin of the above decedents and damages for funeral and burial expenses in this suit styled as one for wrongful death on the basis of products liability and negligence theories. The remaining Defendants, Piper Aircraft Company and Hartzell Propeller, Inc., were the manufacturers of the aircraft and propeller respectively. A number of motions are presently before the court, a motion to dismiss filed by Defendant Hartzell Propeller, a motion for judgment on the pleadings or for summary judgment filed by Piper Aircraft, and two motions to strike a responsive brief filed by the Plaintiff. After reviewing the extensive materials submitted by all parties, we have concluded that this action must be dismissed on the ground of *forum non conveniens*. This dismissal will be conditioned on the Defendants abiding by their stipulation to submit to the jurisdiction of the courts of Scotland and their waiver of the Scottish statute of limitations.

Several issues were raised by the motions of the Defendants. Other than their main

argument that the action should be dismissed under the doctrine of *forum non conveniens,* the Defendants also asserted that under applicable choice of laws rules that the law of Scotland would control this action and that pursuant to Scottish law, the Plaintiff neither has standing nor a right to proceed under the theory of strict tort liability. This question of the applicable law is interrelated with the analysis for *forum non conveniens* and because of our decision that the Defendants have shown overwhelming reasons for dismissal under this doctrine, we need not directly confront the standing and liability issues. The Plaintiff has also raised the question of estoppel which we have found to be unpersuasive.

Our primary attention therefore is focused on the factors applicable to the doctrine of *forum non conveniens* and the question whether we should exercise jurisdiction over this action brought by reason of an aircraft accident in Scotland, in which Scottish citizens who were passengers and a Scottish pilot, acting in the course of his employment with a Scottish Air Service, were killed while flying in Scottish airspace and when all decedents' survivors, the real parties in interest, are citizens and residents of Scotland and more particularly, when the only contact with Pennsylvania is that it was the site of the manufacture of the airplane involved in this litigation, not the propeller which was manufactured and designed in Ohio, over seven years prior to the date of the fatal accident. Too much has happened from the date the airplane left the plant of Piper Aircraft, which goes to the heart of the question of liability, that the contact with this forum with respect to this action can at best be described as plainly insignificant.

The procedural history of this case is important to our decision of dismissal. The action was instituted by Plaintiff Reyno in the Superior Court of the state of California for the county of Los Angeles in July of 1977. After being removed to federal court in August of that year, Defendant Hartzell filed a motion to dismiss the action for lack of personal jurisdiction or in the alternative

to transfer the action pursuant to 28 U.S.C. § 1404(a). Defendant Piper then joined in Defendant Hartzell's motion to transfer the action on November 23, 1977. The District Court entered an order on December 21, 1977 granting Defendant Hartzell's motion to quash service of process and granting the motion to transfer this action to the United States District Court for the Middle District of Pennsylvania. The quashing of service of process to Hartzell was based on due process considerations set forth in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The court did not dismiss the action against Defendant Hartzell since valid service against it was possible in the Middle District of Pennsylvania. The importance of the transfer of the action and the quashing of service against Hartzell lies in the applicable choice of laws rule that is relevant to each Defendant under rules of *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) and *Klaxon Co. v. Stentor Electric Manufacturing,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1944).

The facts as noted center on the crash of an aircraft on July 27, 1976 in which the pilot and all passengers were killed in the navigable air space near Tulla, Scotland. The aircraft involved in the accident was a Piper Model TA–23 bearing British registration mark G–AYSF which was manufactured by Defendant Piper at Lock Haven, Pennsylvania. The plane's propeller was designed and manufactured by Defendant Hartzell Propeller, Inc. in Ohio. The aircraft was being piloted at the time of the accident by a Scottish citizen and resident, over mountainous terrain in southern Scotland. Subsequent to the manufacture of the aircraft involved in this accident it was sold and delivered to a purchaser in Ohio for use in the United States. By a chain of events, apparently still unknown to the Defendants, the plane came to be owned and operated by a Scottish air-taxie company in Scotland and the British Isles. The plane was owned, operated, maintained, and serviced by the Scottish owner for several years preceding the accident of July 27,

1976. The British Department of Trade Investigation investigated the accident shortly after its occurrence. Presently, what remains of the wreckage is in the possession of the British Department of Trade Investigation.

The Plaintiff, Gaynell Reyno instituted this action as the personal representative of the estates of five of the decedents. All of these decedents were citizens and residents of the country of Scotland. Also, all heirs and next of kin, and all those persons entitled to recover by virtue of the deaths of the passengers, (if any recovery is decreed), are citizens and residents of the country of Scotland. Plaintiff Reyno is a citizen and resident of California and is not related to the decedents.

The Defendants assert that the accident was due to pilot error or improper maintenance and servicing of the aircraft and in this respect have stated their desire and inability to join the operating company by whom the pilot was employed, the pilot's estate, and the owner and maintainer of the aircraft. A lawsuit has been brought before the courts of Scotland naming as defendants the operating company, MacDonald Aviation, Ltd., the owner of the plane, Air Navigation and Trading Company, Ltd., the executor of the pilot's estate, and the Civil Aviation Authority. Also an action was commenced in the courts of Great Britain against Piper Aircraft and Hartzell Propellers along with MacDonald Aviation and Air Navigation and Trading Company by a personal representative of the sixth passenger in the aircraft at the time of the accident, the only passenger not represented by Gaynell Reyno in the instant action. Therefore at least one action is pending before the courts in the United Kingdom against the present Defendants and other involved parties.

■ We now begin with a discussion of the factors that we believe substantially point to the dismissal of this action under the doctrine of *forum non conveniens.* We have the inherent power to refuse jurisdiction over a case such as this one where the interests of justice require that the suit be brought in a foreign country. *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *DeMateos v. Texaco, Inc.,* 562 F.2d 895 (3d Cir. 1977), *cert. denied* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978); *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448 (2d Cir. 1975) *cert. denied* 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976); *Dahl v. United Technologies Corporation,* 472 F.Supp. 696 (D.Del.1979).

The general factors that we must consider in determining whether to dismiss an action for *forum non conveniens* were set forth by the Supreme Court in *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Mr. Justice Jackson enumerated in that decision numerous private and public interests that should be considered under the doctrine. The factors pertaining to the private interests of the litigants are the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive" *Id.* at 508, 67 S.Ct. at 843. The public factors bearing on the question include the administrative difficulties flowing from court congestion, an interest in having local controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems and conflicts of law foreign to the Court, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 508–509, 67 S.Ct. 839.

The above cited factors have generally been followed by all courts presented with the issue of whether a case should be dismissed because a foreign forum is the more convenient one. *See, e. g., DeMateos v. Texaco, Inc.,* 562 F.2d 895, 899 (3d Cir. 1977); *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 450–51 (2d Cir. 1975); *J. F. Pritchard and Co. v. Dow Chemical of Canada,* 462 F.2d 998, 1000 (8th Cir. 1972); *Fitzgerald v.*

*Westland Marine Corporation*, 369 F.2d 499, 501–02 (2d Cir. 1966); *Dahl v. United Technologies Corporation*, 472 F.Supp. 696, 699 (D.Del.1979); *Top Form Mills v. Sociedad Nationale Industria*, 428 F.Supp. 1237, 1252–53 (S.D.N.Y.1977); *Michell v. General Motors Corporation*, 439 F.Supp. 24, 26–27 (N.D.Ohio 1977); *Texaco Trinidad, Inc. v. Astro Exito Navegacion S. A.*, 437 F.Supp. 331, 332 (S.D.N.Y.1977); *Farmanfarmaian v. Gulf Oil Corporation*, 437 F.Supp. 910, 923 (S.D.N.Y.1977); *DelRio v. Ballenger Corporation*, 391 F.Supp. 1002, 1004 (D.S.C. 1975); *Domingo v. States Marine Lines*, 340 F.Supp. 811, 814–13 (S.D.N.Y.1972); *McCarthy v. Canadian National Railways*, 322 F.Supp. 1197, 1199 (D.Mass.1971); *Olympic Corporation v. Societe Generale*, 333 F.Supp. 121, 123–24 (S.D.N.Y.1971). We have carefully read each of the above cited decisions and in light of these decisions and their analysis of the Gulf Oil factors, it is clear that it would be no less than an abuse of our discretion if we did not dismiss this action on *forum non conveniens* grounds as the Gulf Oil criteria overwhelmingly point to dismissal.

The first factor that we must consider is whether an alternative forum is open to the Plaintiff if this motion is dismissed. Generally, it has been stated by the courts that the doctrine of *forum non conveniens* presupposes that an alternative more appropriate and convenient forum is available. *See, e. g., DelRio v. Ballenger Corporation*, 391 F.Supp. 1002, 1006 (D.S.C.1978), *Texaco Trinidad v. Astro Exito Navegacion S. A.*, 437 F.Supp. 331, 332 (S.D.N.Y.1977); *Farmanfarmaian v. Gulf Oil Corporation*, 437 F.Supp. 910, 915 (S.D.N.Y.1977). This principle is taken from the *Gulf Oil* decision in which it is stated "[i]n all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process . . . ." *Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842. In the instant motion the Defendants have consented to submit to the jurisdiction of the Scottish courts of law and we have noted our intention of conditioning the dismissal of this action on their submission to the jurisdiction of such courts and their waiver of any statute of limitations. Plaintiff has an alternative forum available to her and in fact a case is proceeding in the foreign courts already.

Next, we turn to the important factor of Plaintiff's choice of forum. As stated in *Gulf Oil*, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508, 67 S.Ct. at 843. Here the Plaintiff's first choice was the California state Superior Court. Plaintiff relies on a number of cases under 28 U.S.C. § 1404(a) in which the Plaintiffs were American citizens. This case, however, does not involve section 1404(a) as the determination rests on our inherent power to dismiss and it also does not involve Americans as real parties in interest. Rather, the Plaintiff is a representative of foreign citizens and residents seeking a forum in the United States because of the more liberal rules concerning products liability law.

Generally, the courts have been less solicitous when the plaintiff is not an American citizen or resident and, particularly when the foreign citizens seek to benefit from the more liberal tort rules provided for the protection of citizens and residents of the United States. As stated in *Farmanfarmaian v. Gulf Oil Corporation*, 437 F.Supp. 910, 927 (S.D.N.Y.1977), when a case involves a "claim of a foreign plaintiff, [his] choice of forum should be given less weight than the choice of an American plaintiff . . . ." And in *Olympic Corporation v. Societe Generale*, 462 F.2d 376, 378 (2d Cir. 1972), the court stressed that the balance of the Gulf Oil factors need not be as strong in favor of defendants when the plaintiff is not an American citizen. *See also, Olympic Corporation v. Societe Generale*, 333 F.Supp. 121, 124 (S.D.N.Y. 1971); *Michell v. General Motors Corporation*, 439 F.Supp. 24 (N.D.Ohio 1977).

Also, the plaintiff's choice of forum is generally given less weight when the forum selected is not the plaintiff's home jurisdiction. *Fitzgerald v. Texaco, Inc.*, 521 F.2d

448, 451 (2d Cir. 1975); *McCarthy v. Canadian National Railways*, 322 F.Supp. 1197, 1199 (D.Mass.1971). In this case the real parties in interest, the heirs and next of kin of William Fehilly, Liam Stuart Fehilly, William James McDougall Strom, David Vincent Moran, and Peter Scott, are not American citizens or residents, but rather, citizens and residents of Scotland. Since the real parties in interest are not American citizens, and the forums of either California or the Middle District are not in any way their "home" forum, this factor of plaintiff's choice of forum is entitled to little weight.

The next grouping of factors that we will weigh are the private interests of the litigants, including relative ease of access to sources of proof, availability of compulsory process, cost of obtaining willing witnesses, necessity of a view of the premises, and the site of the investigation of an accident. A review of the facts in this case illustrates that all such private interests point to Scotland as the appropriate forum for this litigation.

■ Nearly all events relevant to this action occurred outside of the Middle District of Pennsylvania. The only connection with this forum is the fact that the plane was manufactured here over seven years before the accident. The only contact with Plaintiff's choice of forum, California, is that Plaintiff's attorney and expert reside there. Convenience to counsel or to expert witnesses, it should be noted, is of small importance in the balancing of factors. See *Car-Freshner Corporation v. Auto Aid Manufacturing Corporation*, 438 F.Supp. 82, 85 (N.D.N.Y.1977). The connections with Scotland are overwhelming. The accident occurred in Scotland, the real parties in interest are citizens of Scotland, the decedents were all citizens of Scotland, the investigation of the accident occurred in Scotland, the aircraft was owned, operated, and maintained by a Scottish company, the pilot was Scottish, the wreckage remains in the possession of the foreign authorities, nearly all witnesses needed for the defense of this suit are located in Scotland, and all witnesses to damages are located in Scotland.

The ease of access to proof element strongly points to dismissal of this action. First, all evidence as to damages, both witnesses and documents, is located in Scotland. Ease of access to sources of proof of damages is an important factor in a wrongful death action. *Domingo v. States Marine Lines*, 340 F.Supp. 811, 815 (S.D.N.Y.1972). Furthermore, nearly all witnesses necessary for the defense of this suit are located in the British Isles. For example, witnesses regarding the maintenance of the aircraft are in Great Britain, witnesses concerning the training of the pilot are located there, and witnesses relating to the investigation of the accident are in the British Isles. None of these witnesses are subject to compulsory process. Clearly, these witnesses are critical to this case and since they are located in Scotland, it would be more convenient for the witnesses and less costly for the litigants to litigate this matter in Scotland. See, *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 (2d Cir. 1975); *Dahl v. United Technologies Corporation*, 472 F.Supp. 696 (D.Del.1979); *Domingo v. States Marine Lines*, 340 F.Supp. 811, 815 (S.D.N.Y.1972); *Top Form Mills v. Sociedad Nationale Industria*, 428 F.Supp. 1237, 1253 (S.D.N.Y. 1977); *J. F. Pritchard & Co. v. Dow Chemical of Canada*, 462 F.2d 998, 1002 (8th Cir. 1972); *DelRio v. Ballenger Corporation*, 391 F.Supp. 1002, 1004 (D.S.C.1975).

Plaintiff relies on the argument that the essential elements needed for proof of her case are present in this forum since the plane was designed and manufactured here. We note that the alleged defective component part, the propeller, was designed and manufactured outside of this forum. Also the aircraft was manufactured over seven years prior to the accident and evidence of any changes in the plane is located in Scotland. Even Plaintiff admits that all witnesses to damages reside in Scotland. Furthermore, we cannot accept Plaintiff's argument that the evidence going to legitimately raised defenses is irrelevant to our determination. The interests of justice require that a trial be fair to all parties, not just the Plaintiff.

While there are no doubt numerous cases that have reached this same conclusion based on fundamental fairness, we will specifically point to just two. The first case we rely on is *Michell v. General Motors Corporation*, 439 F.Supp. 24 (N.D.Ohio 1977). In *Michell* the court held that mere design and manufacture of an infant seat in Michigan was not crucial in the balancing of factors and it dismissed the suit on *forum non conveniens* grounds where the injury was to Canadian plaintiffs, involved a Canadian accident, when presentation of Canadian witnesses was necessary and could not be guaranteed in the United States. *Id.* at 25–26. All of these factors are present in the instant case and like the *Michell* court, we find the evidence relating to design in this action to be overwhelmed by the evidence needed from Scottish sources.

The second case on point on this question is *Dahl v. United Technologies Corporation*, 472 F.Supp. 696 (D.Del.1979). *Dahl* was brought in Delaware by the personal representative of four Norwegians who died in a crash of a Norwegian owned and operated helicopter in Norwegian territorial waters against the helicopter manufacturer on the basis of design and manufacture defects. Chief Judge Latchum discussed the nearly identical factual pattern as we have here in the following manner:

> . . . a substantial amount of the testimonial evidence will come from Norwegians. Testimony from persons who knew the decedents will be relevant to the damages issue. Among the potential liability witnesses are employees of Helikopter Service A/S, employees from other firms in Norway that serviced or made installations on the helicopter, and the Norwegian government officials who investigated the accident.

*Id.* at 700. We think the chief judge was absolutely correct, that we must look to all evidence that is necessary for a fair trial and in this case the place to find such evidence is Scotland.

Interrelated with the above discussion is the fact that the witnesses and other evidentiary materials that are located in Scotland are beyond the reach of compulsory process of this court. The unavailability of compulsory process to compel the attendance of witnesses necessary for a complete and fair trial has been recognized as a critical factor in the dismissal of cases for *forum non conveniens*. *See e. g.*, *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 (2d Cir. 1975); *Fitzgerald v. Westland Marine Corporation*, 369 F.2d 499 (2d Cir. 1966); *Dahl v. United Technologies Corporation*, 472 F.Supp. 696, 700 (D.Del.1979); *Michell v. General Motors Corporation*, 439 F.Supp. 24, 27 (N.D.Ohio 1977); *Texaco Trinidad, Inc. v. Astro Exito Navegacion S. A.*, 437 F.Supp. 331 (S.D.N.Y.1977); *DelRio v. Ballenger Corporation*, 391 F.Supp. 1002, 1004 (D.S.C.1975); *Domingo v. States Marine Lines*, 340 F.Supp. 811, 815 (S.D.N.Y.1972).

Finally, the absence of necessary third parties weighs heavily on our determination that the Middle District is not a suitable forum for this litigation. The Defendants have persuasively argued that persons located in Scotland ought to be made parties to this suit. These include the pilot, the owner of the plane, and the operating company. Since the Defendants in this action cannot implead these necessary parties it would be unfair to make Piper and Hartzell proceed to trial in this forum. This inability to implead parties located in foreign countries has likewise been viewed as a critical factor by the courts. *See e. g.*, *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1946); *Texaco Trinidad, Inc. v. Astro Exito Navegacion S. A.*, 437 F.Supp. 331, 334 (S.D.N.Y.1977); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975); *Fitzgerald v. Westland Marine Corporation*, 369 F.2d 499, 502 (2d Cir. 1966); *Olympic Corporation v. Societe Generale*, 333 F.Supp. 121, 124 (S.D.N.Y. 1971); *Domingo v. States Marine Lines*, 340 F.Supp. 811, 816 (S.D.N.Y.1972). These potential defendants could be reached in Scotland and in fact they have been joined with the instant Defendants in a suit in the British Isles. Certainly it would be fairer to all parties and less costly if the entire case was presented to one jury with available testimony from all relevant witnesses.

The last factor that we will discuss pertaining to the private interests is the necessity of a view. More generally, we believe this factor of *Gulf Oil* requires us to consider, as many courts have done, where the accident or event took place. All facts relevant to the crash are in Scotland, other than the fact that the manufacture and design of the plane occurred in the United States seven years before. If weight should be assigned to this "view" criteria, it certainly favors the Defendants. Familiarity with the topography around Tulla, Scotland and inspection of the wreckage of the plane would be aided by a trial in the British Isles where the accident occurred.

We now will look to the factors concerning the public interest which we believe even more strongly point to dismissal. These factors include court congestion, local interest in the lawsuit, court familiarity with the law that will govern the action, the avoidance of unnecessary problems and conflicts of law foreign to the court and the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 507–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1946); *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 899, n. 2 (3d Cir. 1977); *Michell v. General Motors Corporation*, 439 F.Supp. 24, 27 (N.D.Ohio 1977).

Uppermost in our weighing of these public interest factors is that a trial in this forum would be hopelessly complex and confusing for a jury as different laws will apply to different parties. From our review of the applicable choice of law rules, it appears that Pennsylvania law would apply to Defendant Piper and that Scottish law would apply to Defendant Hartzell.

■ The law is clear that we must apply the choice of law rule of the state in which we sit, Pennsylvania. *Klaxon Co. v. Stentor Electric Manufacturing, Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, when a case is transferred pursuant to 28 U.S.C. § 1404(a), we then apply the choice of law rules of the state from which the case was transferred. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Thus in this case we must apply the California choice of law rules to Defendant Piper. In applying the choice of law rules of California we have three choices of law, California, Pennsylvania, and Scottish. With respect to Defendant Hartzell, the applicable law is not as easily arrived at.

Defendant Hartzell as previously noted, was found to have insufficient contact with the state of California and service was quashed. The District Court of California did not dismiss the action to Defendant Hartzell, but instead properly transferred the action to this forum. We use "properly" in the sense that the court had the power to transfer the action as to Defendant Hartzell even though service was quashed. Plaintiff argues that the *Van Dusen* rule applies to Hartzell as well as Defendant Piper, however, for the reasons that follow, we cannot accept this assertion.

■ The purpose of the *Van Dusen* rule was to prevent a party from obtaining a change in the law that would be applied to a case by seeking a transfer of the action. In essence, the *Van Dusen* Court ruled that a transfer under section 1404 should result in a change of courtrooms only, not a change in the applicable law. In the instant case the district court of California held that the law of California could not apply to Defendant Hartzell because of insufficient contacts with that state. The question we are presented with is whether the Plaintiff in this action can capture the law of California under *Van Dusen* for transportation to this district and have it apply to Defendant Hartzell when service against Defendant Hartzell was improper in California. We hold that Plaintiff cannot accomplish this. Simply, the Plaintiff cannot take advantage of the law of California when she could not properly obtain jurisdiction over Defendant Hartzell there. Thus, to Hartzell we must apply Pennsylvania choice of law rules.

First, we will briefly discuss whether California choice of law rules require that we apply California, Pennsylvania, or Scottish law to Defendant Piper. California courts follow the governmental interest approach

in resolving conflict of law issues. *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). As Plaintiff states in her brief the "governmental interest approach differs greatly from the significant contacts approach utilized in Pennsylvania." The governmental interest approach, in determining the law applicable in a California forum, applies to situations involving a foreign country and the choice between the two. *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). The objective of the analysis is to determine the law that most appropriately applies to the issue involved.

The governmental interest approach involves three steps of analysis. First, the applicable legal issue and law must be identified. Second, the state interest underlying the law must be determined. Third, it must then be determined if that interest would be furthered through application of the states' law to resolve the specific issues involved in the case. We intend to make no definitive ruling on what law will apply under the California governmental interest analysis. Rather, our discussion will go only so far as to hold that either Pennsylvania or Scottish law will apply under the California choice of laws rules. We are relegated to this less than complete analysis because of our unfamiliarity with Scottish law which in itself is a factor supportive of dismissal of the action.

Areas of conflict are present between these three jurisdictions, i. e., Pennsylvania, California, and Scotland. First, Scottish law does not allow a personal representative to bring an action of this kind in Scotland. Under Scottish law, a personal representative may only bring an action for funeral expenses. Otherwise, an action of this type may be brought only by the deceased's relatives or dependents. We have previously stated that Gaynell Reyno meets neither of these requirements. Both Pennsylvania and California appear to permit such suits. Second, the law of Scotland has not adopted and does not recognize the theory of strict products liability. The only

basis for liability in Scotland for the manufacturer of a defective product is negligence. In contrast, both Pennsylvania and California recognize strict liability.

What interests of the state these laws promote must be identified by reference to the interpretations of the laws by the respective forum courts. California courts have held that the states' interest in creating a cause of action for wrongful death lies in governing the distribution of proceeds to beneficiaries and also the interest of deterring conduct within its borders that takes life. *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). For the purposes of this discussion we will assume that similar interests are promoted by the Pennsylvania laws. Since the accident did not occur in either Pennsylvania or California and because none of the decedents were residents of either of these states, it would appear that the application of either Pennsylvania or California law would not further the purpose of the wrongful death laws. If the purpose of the Scottish law, permitting recovery for relatives of decedents, is similar, it would seem that its interests would be furthered by the application of the law of Scotland.

Particularly, this is true with respect to the rule of law in Scotland that only relatives or dependents of a deceased may bring an action of the type of the instant action and not a personal representative unrelated to the decedent. We, however, only have affidavits from lawyers from Scotland as to what the rules of law are in that country and thus we cannot make, as we said before, any definitive ruling on the purpose of the Scottish law or thereby the choice of law. We do agree with the Plaintiff that in line with the California decisions, that the restrictions on recovery that exist in Scotland would generally not be applied in a choice of laws situation as the foreign country would likely have no interest in restricting any recovery its citizens might receive in foreign courts from foreign defendants. See, *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). We do not believe the provisions restricting

suits of this nature to relatives of the decedents fall within this general principle however. Such a restriction would likely be for the purpose of insuring that suits are brought by persons interested in the action so that competence of counsel and administration of a suit are in the hands of those parties with the ultimate interest.

■ We therefore return to our previously enunciated conclusion that the law of California would not be applied under the choice of law rules of California as that state has no interest in having its laws apply. Plaintiff admits this fact. Furthermore, we believe that Pennsylvania also has no governmental interest in having its wrongful death laws apply. For the protection of the real parties in interest in this suit we believe that the application of Scottish law would further the purpose of the laws of Scotland with respect to the restrictions on proper plaintiffs. We believe that the California courts would therefore apply the law of Scotland to this suit.

There exists a conflict among the three forums in the law of products liability. Scotland only recognizes negligence as a basis for liability while the two states apply the rule of strict liability. California has no interests in having its products liability law apply and thus under the California choice of law rules it would not apply its own law. See, *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976); *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Our choice is thus between Scottish law and the law of Pennsylvania.

The law of Scotland in not recognizing strict liability is more limited in terms of liability than Pennsylvania. Generally, such a restriction provides an indication that the law seeks to limit the liability of its resident manufacturers to those cases where negligence can be shown; that only culpable conduct will result in liability. If the only purpose of the requirement of proof of negligence is to aid manufacturers in Scotland, then we may assume that the purpose of the law will not be furthered by applying it to American manufacturers.

Pennsylvania's interests in recognizing strict liability is foremost in ensuring that citizens will be compensated for injuries resulting from defective products. There does exist in the imposition of strict liability on manufacturers an element of deterrence. While the element of compensating injured residents outweighs the deterrence factor, at least some slight interest on the part of the state of Pennsylvania would be furthered if the law of Pennsylvania were applied to Defendant Piper. No Pennsylvania governmental interest, however, would be promoted by the application of Pennsylvania law to Defendant Hartzell. Since none of the decedents nor their relatives were Pennsylvania citizens, Pennsylvania's interest in compensating its injured citizens is of little weight. While the interest of Pennsylvania in applying its laws is indeed slight, neither of the other forums has any apparent interest in applying their laws and we therefore assume that California courts would apply Pennsylvania law under the choice of law rules of California.

In summary, under the California choice of law rules, it appears the law of Scotland would be applied to Defendant Piper with respect to the wrongful death laws. Under this interpretation, Plaintiff would not be a proper litigant. Second, the strict liability law of Pennsylvania would likely apply to Defendant Piper and not the negligence law of Scotland.

Next, we will briefly review the law that should apply to Defendant Hartzell under Pennsylvania choice of law rules. As Plaintiff accurately points out in her brief, the courts of Pennsylvania follow the significant contacts approach. In *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964), the Supreme Court of Pennsylvania adopted the rule of the Restatement Second of Conflicts of Laws, section 145, which states that in a tort action, the rights and liabilities of the parties are determined by the local law which has the most significant relationship to the occurrence or to the parties. "To determine which law has the most significant relationship, the court is instructed to consider: the place where the

injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, place of incorporation, or the place of business of the parties; and the place where the relationship between the parties is centered." *Lewis v. Chemetron Corporation*, 448 F.Supp. 211, 212 (W.D.Pa. 1978); *Zurzola v. General Motors Corporation*, 503 F.2d 403 (3d Cir. 1974); *Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978). Any analysis of the relevant contacts in the instant suit leads to the inevitable conclusion that the courts of Pennsylvania would apply the law of Scotland to this action.

To reiterate some of the crucial aspects of the contacts, we begin with the fact of the accident in Scotland. The conduct giving rise to the injury occurred in one of three places, Ohio, Pennsylvania, or Scotland. The real parties in interest are domiciled in Scotland, are residents of Scotland, while the Defendants are located in Ohio and Pennsylvania. We will not outline the contact in any more detail as we find the weight of the contacts with Scotland to be overwhelming. We hold that the law of Scotland would apply in the instant action to Defendant Hartzell.

We will now once again turn our attention to the public interest factors of *Gulf Oil*. As *Gulf Oil* recognized an extremely important factor in the balance of interests is the fact that foreign law will govern all or part of a case. 330 U.S. at 508, 67 S.Ct. 839; *see also, Farmanfarmaian v. Gulf Oil Corporation*, 437 F.Supp. 910, 924 (S.D.N.Y. 1977); *Domingo v. States Marine Lines*, 340 F.Supp. 811, 816 (S.D.N.Y.1972); *Michell v. General Motors Corporation*, 439 F.Supp. 24, 27 (N.D.Ohio 1977); *DelRio v. Ballenger Corporation*, 391 F.Supp. 1002, 1004 (D.S.C. 1975); *Fitzgerald v. Westland Marine Corporation*, 369 F.2d 499, 502 (2d Cir. 1966); *McCarthy v. Canadian National Railways*, 322 F.Supp. 1197 (D.Mass.1971). We have determined that Scottish law will govern part of this case. We, of course, are not familiar with the law of Scotland and would have to rely on experts from that country. *See, Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir. 1975). Clearly, it would be better for all parties for this case

to proceed in a court in Scotland that is at home with the law of that country. This case is further complicated by the fact that different laws would apply to different parties. The result of this would no doubt cause hopeless confusion and would likely lead to inconsistent or an inequitable result if a trial were held here. Dismissal of this action avoids unnecessary problems of conflict of laws and the application of foreign law.

Another factor that Gulf Oil suggests that we consider is the unfairness of burdening citizens in this forum with jury duty when this forum has little connection with the controversy. The only connection with this forum is that the plane was manufactured in this district years before this accident. Trial of this case would take weeks and we do find that it would be an unfair burden to impose this on the citizens in this community. Also, it would be a huge burden on this court in terms of both time and the costs involved. Our court is too congested for us to try an action that belongs in a foreign forum. *See, Gulf Oil* at 508, 509, 67 S.Ct. 839; *DelRio v. Ballenger Corporation*, 391 F.Supp. 1002, 1005 (D.S.C. 1975); *Michell v. General Motors Corporation*, 439 F.Supp. 24, 28 (N.D.Ohio 1977); *Domingo v. States Marine Lines*, 340 F.Supp. 811, 816 (S.D.N.Y.1972); *Dahl v. United Technologies Corporation*, 472 F.Supp. 696, 701 (D.Del.1979).

If we attempted to try this action in this forum the administrative and legal difficulties would be extreme. The legal problems include determining the serious and complex conflict of law questions, which this memorandum has only touched on. Likewise, the large numbers of witnesses that would be needed from Scotland, the British Isles, Ohio, and California would likely cause administrative difficulties. The physical evidence is in Scotland or the British Isles. We also note that Scotland has a large interest in the outcome of this litigation as it occurred in its airspace. The case thus may shed light on considerations which affect the safety of its citizens. *See, Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir.

1975). All of these matters lead us to conclude that the public interest would be better served by a trial in Scotland.

 That the law of Scotland is not as helpful to the real parties in interest is not a weighty consideration. We must determine which forum is proper because of convenience and the interests of justice and the decision cannot be correctly made if the amount of a plaintiff's likely award is given undue weight. Generally, the cases that have been dismissed on the ground of *forum non conveniens* all involve situations where a party enters a forum with the hope of seeking more liberal rules of recovery. If the foreign law that ought to govern a case does not protect its citizens as fully as the law of the dismissing forum, that is a matter to be dealt with in the foreign forum. *See e. g., Michell v. General Motors Corporation*, 439 F.Supp. 24, 27 (N.D.Ohio 1977); *Texaco Trinidad v. Astro Exito Navegacion S. A.*, 437 F.Supp. 331, 333–34 (S.D.N.Y.1977); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975).

The Plaintiff by brief and at oral argument asserted that the Defendants should be estopped from seeking dismissal of this action on *forum non conveniens* grounds. No cases are cited in support of that proposition and we believe that is a sufficient indicator of the merit of that argument. Plaintiff argues that since the case has been transferred once before and for the reasons stated by Defendants in their briefs that they should now be estopped from arguing that the Middle District is not a proper forum. A reading of the briefs filed by Plaintiff in response to the transfer motion, in accordance with this argument, would lead us to conclude that Plaintiff should be estopped from raising this argument. The papers filed concerning the motion to transfer are, of course, irrelevant to the question we have decided. They were filed early on in this proceeding before many of the important facts of this case were uncovered. Also, Defendants should not be punished for their failure to file a motion to dismiss for *forum non conveniens* first, instead of the motion to transfer. If they would have filed such a motion we feel sure that the California district court would have likewise dismissed this action.

The action will be dismissed on the conditions that the Defendants waive any defense that they might have relating to any statute of limitations that did not exist prior to the initiation of this suit and that they abide by their stipulation to submit to the jurisdiction of the Scottish courts.